Filing # 57403829 E-Filed 06/06/2017 11:41:20 PM

|  |  |
|---|---|
| | IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT, IN AND FOR ORANGE COUNTY, FL |
| **MILDRED PEREZ-DAVIS,** | CASE NO.: 17-CA- |
| | FLA BAR NO.: 0739685 |
| Plaintiff, | |
| v. | |
| **SCOTT RANDOLPH, in his official Capacity as ORANGE COUNTY TAX COLLECTOR,** | |
| Defendant. | |
| _____/ | |

## COMPLAINT

Plaintiff, MILDRED PEREZ-DAVIS, hereby sues Defendant, SCOTT RANDOLPH in his official capacity as ORANGE COUNTY TAX COLLECTOR, and alleges:

### NATURE OF THE ACTION

1. This is an action brought under Chapter 760, Florida Statutes. This is also an action brought pursuant to the Family and Medical Leave Act (FMLA) of 1993, 29 U.S.C. §§2612, 2624.

2. This is an action involving claims which are, individually, in excess of Fifteen Thousand Dollars ($15,000.00), exclusive of costs and interest.

### THE PARTIES

3. At all times pertinent hereto, Plaintiff, MILDRED PEREZ-DAVIS, has been a resident of the State of Florida and was employed by Defendant. Plaintiff is a member of a protected class because of her actual or perceived disability.

4. At all times pertinent hereto, Defendant, SCOTT RANDOLPH, in his official capacity as ORANGE COUNTY TAX COLLECTOR, has been organized and existing under the laws of the State of Florida. At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above. Defendant was Plaintiff's employer as it relates to these claims.

## CONDITIONS PRECEDENT

5. Plaintiff has satisfied all conditions precedent to bringing this action in that Plaintiff filed a charge of discriminate on with the Florida Commission on Human Relations and with the EEOC. This action is timely filed thereafter.

## STATEMENT OF THE ULTIMATE FACTS

6. Plaintiff, a Hispanic American born female, began her employment with Defendant on January 7, 2008 and held the position of Title Clerk I at the time of her termination on June 8, 2016.

7. Plaintiff was subjected to a hostile work environment, disparate treatment, different terms and conditions of employment, and was held to a different standard because of her disability.

8. The mistreatment came at the hands of specifically, but not limited to Wanda Smith, Jan Trauger, and Cindy Valentine.

9. Defendant has a matrix point system by which employees are designated points for absenteeism. When an employee reached eight points, the employee would be subject to termination; however, managers have sole discretion to determine which employees would be recommended for suspension and/or termination. However, Smith used her discretionary

2

authority to seek reasons to terminate Plaintiff even under circumstances that were beyond Plaintiff's control.

10. By way of example, in November 2015, Plaintiff's mother became ill and Plaintiff had to travel to New York to visit with her. Plaintiff took leave without pay for the leave period. During the time, off, her supervisor Smith asked that she provide documentation of the trip to substantiate her mother's illness. Smith told Plaintiff that if she did not return to work by Friday, she would be fired.

11. Because her mother's condition was a private matter and Plaintiff was not the patient, she was unable to provide any medical records, but managed to get her mother's nurse to provide medical documentation of the visit with her mother and faxed it to Smith. Upon Plaintiff's return, Plaintiff realized that Smith did not request the documentation in good faith as she threw it into her office garbage can.

12. A month later, on December 22, 2015, Plaintiff experienced a severe stomachache. Upon her arrival at work, she used the restroom due to her ailment. Plaintiff spoke with her Manager, Wanda Smith and explained her symptoms and illness.

13. Plaintiff then explained to Smith that her pain was severe and that she needed to go see her physician. Smith replied telling Plaintiff that she was sorry, but she had a lot of girls that call out sick and she could not permit her to leave to go the doctor.

14. Plaintiff continued to explain to Smith that her condition was not improving and that she really needed medical attention. Smith then ignored Plaintiff's requests for the remainder of the day until Plaintiff sought Smith's approval once again.

15. Approximately 2:00 p.m., Plaintiff was forced to go to the bathroom again and went to locate Smith, but could not find her. Plaintiff then went to speak with Assistant Manager, Pam Wright and explained that she was experiencing more severe medical problems. Wright told Plaintiff that because she had already reached a maximum of 8 points in Defendant's matrix attendance point system for late arrivals and/or absences, she could not go home. Wright referred Plaintiff back to Smith as the staff in charge of making the decision.

16. Upon Smith's return, Plaintiff told her that the condition worsened and she experienced bleeding. Smith explained that she had already contacted Human Resources and no one had yet responded to her request for how to handle Plaintiff's situation, given the point system.

17. In the presence of Wright, Smith further informed Plaintiff that if she left or walked out of the office to leave, she would be fired. After hearing this and while still enduring severe pain, Plaintiff began to cry.

18. On Plaintiff's 15 minute break, as she went to the restroom, she passed Wright's office. Wright told Plaintiff that she should try to drink tea for the stomachache. Plaintiff explained that tea would not help with the bleeding and that she really needed to go to a hospital. Realizing that Wright would not allow Plaintiff to go see a physician or go to the hospital, Plaintiff walked away to continue to the bathroom.

19. One of Plaintiff's co-worker's visited the restroom while Plaintiff was also present. Smith sent the co-worker into the restroom to ask Plaintiff if she was okay and Plaintiff responded, "No" and relayed this response back to Smith. Thereafter, after Plaintiff returned to

her desk, one of Defendant's regular customers from Salcedo Autos saw Plaintiff and stated, "Millie, you look sick; are you okay?"

20.     At the end of the day, after Plaintiff endured the pain and repeated refusals to go see a physician, Smith sarcastically stated, "You can go home now." Smith then handed Plaintiff a form to meet regarding the 8th point system.

21.     As Plaintiff walked to her car, she began to feel very weak. A co-worker assisted her outside, where she passed out. The co-worker contacted Plaintiff's husband and son where she was transported home. Upon arriving at home, her husband took her to a hospital in Hunter's Creek. Doctor's ran several tests, and Plaintiff ultimately had Plaintiff transported by ambulance to Osceola Regional Hospital, where she spent one week hospitalized for serious health conditions.

22.     On December 23, 2015, Plaintiff contacted Smith to inform her of her condition. Thereafter, due to the severity of her condition, she was placed on short term disability. After reporting the severe condition to Human Resources, Jan Trauger called Plaintiff and asked Plaintiff to resign. Trauger told Plaintiff that if she resigned, she would not fight her on the unemployment. Trauger continued to tell Plaintiff that once she resigned, she could collect food stamps and Medicaid.

23.     Plaintiff provided a physician's note from Osceola Regional Medical Center to document her inpatient stay from December 22, 2015 to December 26, 2015 and completed FMLA paperwork to cover this period.

24.     On December 28, 2016, Plaintiff's physician provided a note for Plaintiff to be excused from December 28, 2015 to January 8, 2016 and to return to work on January 11, 2016.

25. Thereafter, Jan Trauger repeatedly requested Plaintiff to obtain letters from her physician to document her health condition, even though she had already submitted documentation. Trauger then contacted Defendant's attorney and asked Plaintiff to direct all future emails and correspondence to Stuart Buchanan, an Attorney with Swann, Hadley, Stump, Deitrich, and Spears. Buchanan sent Plaintiff a template (on Defendant's letterhead) for Plaintiff's physician to complete each time Plaintiff went to her physician or Gastroenterologist, which was approximately seven or eight times.

26. On March 16, 2016, Plaintiff sent an FMLA request and an ADA request to Jan Trauger for accommodations, requesting leave from work until April 16, 2016 and to return to work on April 20, 2016. Plaintiff also sent an email to Buchanan requesting assistance with FMLA leave. Prior to returning, Plaintiff became ill again with bronchitis and obtained an additional physician's note documenting her illness. Defendant denied Plaintiff's FMLA and ADA request.

27. On or about April 20, 2016, on the day Plaintiff returned to work, her former supervisor Smith had been transferred to another location; therefore, Plaintiff provided the note to Manager Sarah Barrington. When Barrington saw the letter on Defendant's letterhead as directed by Trauger and Buchanan, Barrington stated that the letter would not suffice and called Trauger, who then stated that the documentation needed to be on the physician's letterhead. Plaintiff was asked to leave work to go get another letter from her primary care physician on his letterhead.

28. When Plaintiff returned, she provided a physician's note, which indicated work restrictions that requested Defendant permit her to take frequent bathroom breaks. After Plaintiff

retrieved the letter stating the conditions and the restrictions, she worked for the entire month of May 2016 without any issues.

29. On or about June 3, 2016, Plaintiff went on her 15minute break. When she returned, her computer timed-out and she could not log in. She went to look for the Manager Shannon Jordan, but could not locate Jordan. She eventually found Jordan in her office and asked for assistance with clocking in. Plaintiff also asked Jordan to check the camera to see how Plaintiff attempted to clock-in. Shannon said, "Okay, I will go ahead and fix it."

30. Within five minutes, Jordan returned to Plaintiff's desk and told Plaintiff that she, spoke to Trauger in HR and that Trauger would not allow Jordan to change the time. Plaintiff stated, "That's fine, I know what's going on . . . I know they want to get rid on me."

31. Upon information and belief, Trauger would fire Plaintiff for refusing to resign after Trauger told her to resign. After lunch, Jordan hand delivered Plaintiff a letter requiring her to attend a meeting with following Monday. Meeting attendees included Tracy Longest, Manager, Shannon Jordan, Landra Robeson, and Karen Cotte, Union Shop Steward. Robeson told Plaintiff that she reached her 8th point and she would be terminated.

32. Cotte spoke up in disagreement with the decision to terminate Plaintiff based on the circumstances and asked about supervisor's discretion and a loyalty/honor system since Plaintiff was a long time employee. Robeson stated they no longer used the loyalty/honor system.

33. Cotte then requested to see the footage of Plaintiff's computer issue. Robeson stated there were issues with the footage in the camera system. Cotte stated that as the Shop Steward, she desired to see the camera footage. Robeson stated they were, "working on it." Yet,

7

Defendant continued with the process and fired Plaintiff. Regina Hall, Stuart's assistant asked for Plaintiff's key card and Plaintiff left the building.

34. Plaintiff applied for unemployment/reemployment assistance benefits with the Florida Department of Economic Opportunity, ("FDEO"), but her benefits were denied. Defendant indicated Plaintiff was terminated for misconduct connected with her work. Plaintiff appealed the denial and after an investigation, FDEO found Defendant's reason for the termination as not credible, reversed the decision, and approved Plaintiff's unemployment benefits.

35. Plaintiff has retained the undersigned to represent his interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the statutory provisions cited herein and such other grounds as are authorized.

## COUNT I
## DISABILITY DISCRIMINATION

36. Paragraphs 1 through 35 are re-alleged and incorporated herein by reference.

37. This is an action against Defendant for disability discrimination brought under Chapter 760, Florida Statutes.

38. Plaintiff has been the victim of discrimination on the basis of her disability or perceived disability. During the course of Plaintiff's employment with Defendant, she was treated differently than similarly situated non-disabled/perceived-as-disabled employees.

39. Defendant is liable for the differential treatment and its refusal to accommodate the Plaintiff which adversely affected the terms and conditions of Plaintiff's employment with Defendant.

40. Defendant controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

41. In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were disability/perceived-disability based and in violation of the laws set forth herein.

42. The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant. The events set forth herein lead, at least in part, to adverse actions against Plaintiff.

43. Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon disability or perceived disability, under the laws cited herein.

44. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive relief under Chapter 760, Florida Statutes and 42 U.S.C. §12101 et seq..

## COUNT II
## RETALIATION

45. Paragraphs 1 through 35 are re-alleged and incorporated herein by reference.

46. Defendant is an employer as that term is used under the applicable statutes referenced above.

47. The foregoing allegations establish a cause of action for unlawful retaliation after Plaintiff reported or opposed unlawful employment practices adversely affecting Plaintiff under 42 U.S.C § 12101 et seq., Chapter 760, Florida Statutes, and other statutory provisions cited herein.

48. The foregoing unlawful actions by Defendant were purposeful.

49. Plaintiff voiced opposition to unlawful employment practices during Plaintiff's employment with Defendant and was the victim of retaliation thereafter, as related in part above.

50. Plaintiff is a member of a protected class because Plaintiff reported unlawful employment practices and was the victim of retaliation thereafter. There is thus a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter.

51. As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages. These damages are continuing and are permanent. Plaintiff is entitled to injunctive relief.

## COUNT III
## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

52. Paragraphs 1 through 35 are re-alleged and are incorporated herein by reference.

53. This is an action against Defendant for harassing Plaintiff due to using leave time, and for terminating Plaintiff for taking time off that was authorized by and protected under the FMLA. This is thus both an interference and retaliation claim.

54. After taking leave for serious health conditions, Defendant harassed Plaintiff and took adverse personnel actions against her for using leave.

55. Plaintiff was denied rights and a benefit conferred by the FMLA and was terminated after taking protected leave.

56. Defendant's violations of the FMLA were willful.

57. As a direct and proximate result of Defendant's willful, wanton, and malicious acts described in part above, Plaintiff has sustained damages for the loss of employment, as well as the security and peace of mind it provided. Plaintiff has incurred damages for lost wages, and other damages attendant with the loss of her job. These damages have occurred in the past, are occurring at present and will continue in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a) that process issue and this Court take jurisdiction over this case;

(b) that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c) enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d) enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e) enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f) award Plaintiff interest where appropriate; and

(g) grant such other further relief as being just and proper under the circumstances, including but not limited to reinstatement.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

DATED this 6th day of June 2017.

Respectfully submitted,

/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
310 East Bradford Road
Tallahassee, FL 32303
Telephone: (850) 383-4800
Facsimile: (850) 383-4801
Email: marie@mattoxlaw.com
Secondary emails:
michelle2@mattoxlaw.com
marlene@mattoxlaw.com
ATTORNEYS FOR PLAINTIFF