**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MILDRED PEREZ-DAVIS,

        Plaintiff,

v.                                               Case No: 6:17-cv-1641-Orl-40KRS

SCOTT RANDOLPH,

        Defendant.
_____/

## ORDER

This cause is before the Court on Defendant Scott Randolph's Motion for Summary Judgment (Doc. 22), Plaintiff's Response in Opposition (Doc. 27), and Defendant's Reply (Doc. 33). With briefing complete, the matter is ripe. Upon consideration of the record as cited by the parties in their respective briefs, the Court finds that Defendant's Motion is due to be granted in part and denied in part.

**I. BACKGROUND**

On January 7, 2008, Plaintiff Mildred Perez-Davis began her employment with Defendant Orange County Tax Collector ("**OCTC**")[1] as a Title I Clerk. (Doc. 26, ¶¶ 1, 3). In this position, Plaintiff helped customers to, among other things, obtain driver's licenses and vehicle registrations and pay property taxes. (Doc. 28-7, at p. 109). When Plaintiff began working at OCTC, Pam Wright was the office's Assistant Manager and Plaintiff's

---

[1] Because Plaintiff named Scott Randolph in his official capacity as Defendant, the suit is effectively against the office of the OCTC. *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) ("[W]hen an officer is sued under Section 1983 in his or her official capacity, the suit is simply 'another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985))).

supervisor, and Wanda Smith was the Manager. (*Id.* at pp. 27–28). The OCTC office was restructured in January 2016, and Tracy Longest and Shannon Jordan were named co-Managers. (*Id.* at p. 29).

While employed by the OCTC, Plaintiff was subject to a point-based tardiness policy. Employees subject to the policy are assessed a point each time they are "late from lunch, late to work, [or] late from a break." (Doc. 24-3, 13:11–15:1). On receipt of the seventh point, the employee is suspended for a day without pay; after the eighth, the employee is subject to termination. (*Id.* 17:14–18:3). Before being terminated, an employee with eight points is entitled to a predetermination hearing, wherein the employee may explain why he or she should not be terminated. (*Id.* 18:4–19:1). According to OCTC's human resources administrator, Jan Trauger, employees with medical problems that cause them to earn points are given leeway and may have points forgiven. (Doc. 24-2, 11:4–19, 14:3–17, 23:15–14:6). This point system would prove consequential for Plaintiff.

During the time period relevant to this action, Plaintiff suffered from ulcerative colitis, bronchitis, and asthma. (Doc. 28-7, 47:20–48:5, 89:7–15). Because of these diagnoses, Plaintiff has experienced "[b]leeding in the rectum, constant vomiting, constant diarrhea, [and] massive stomach pain." (*Id.* 47:20–48:5).

On November 13, 2015, Plaintiff sought leave pursuant to the Family and Medical Leave Act ("**FMLA**"), 29 U.S.C. §§ 2601 *et seq.*, from November 18, 2015, through November 23, 2015, to care for her mother after knee surgery. (*Id.* 39:9–40:8; Doc. 23-1,

pp. 136–41).[2] When Plaintiff originally requested time off, she was advised that she had only three days of personal leave and therefore needed to apply for the additional two days through FMLA. (Doc. 28-7, p. 41). OCTC required that Plaintiff submit medical information from her mother's physician to facilitate her FMLA request. (*Id.* at pp. 130–31; Doc. 23-1, pp. 138–41).[3] Ultimately, OCTC granted Plaintiff's leave request, with Plaintiff using a combination of personal and FMLA leave. (Doc. 28-7, pp. 43–44). Ms. Smith warned Plaintiff that if she did not return with paperwork from her mother's doctor, she would be fired. (*Id.* at p. 135).

By December 2015, Plaintiff had been assessed seven points for unexcused absences and/or tardies. On December 21, 2015, Plaintiff received her eighth point for returning to her desk seconds late from a break. (Doc. 28-4, pp. 2–5; Doc. 28-7, 96:12–97:3). Because she had reached eight points, a predetermination hearing was scheduled to take place December 23, 2015, at 10:00 a.m. (Doc. 28-4, p. 3). On December 22, 2015, Plaintiff woke feeling ill but, fearing termination, nonetheless reported for work. (Doc. 28-7, 97:23–99:1). During her shift, Plaintiff asked Ms. Smith multiple times to be excused so that she could get medical attention, but Ms. Smith refused all of Plaintiff's requests until her shift ended at 5:00 p.m. (*Id.* 97:23–99:1, 107:23–108:21).[4] Weak from working all day while sick, Plaintiff passed out in the parking lot. (*Id.* 97:15–98:11).

---

[2] This was the second time Plaintiff obtained leave through FMLA while employed at OCTC. In 2011, Plaintiff received FMLA leave for her own health problems. (Doc. 28-7, 36:23–37:18).

[3] According to Plaintiff, the documents she was made to retrieve were immediately thrown away by her supervisor upon her return. (Doc. 28-7, 130:16–131:20).

[4] Worse yet, Ms. Smith threatened Plaintiff with termination if she left before 5:00 p.m. (*Id.* 108:5–21).

Plaintiff was admitted to the hospital the same day. (*Id.* 46:7–13). On January 5, 2016, Plaintiff requested FMLA leave while she recovered. (*Id.* 44:14–46:6). The leave request was backdated to begin on December 23, 2015—Plaintiff's first day missing work after the hospitalization—until her FMLA leave exhausted on March 16, 2016. (Doc. 28-1, p. 2). Plaintiff was also advised that she would need to supply a doctor's note before returning to work. (Doc. 23-1, 62:8–14; Doc. 28-1, p. 4).

While on leave, Ms. Trauger called Plaintiff at home and told her that she would be terminated upon returning to work, and further encouraged Plaintiff to "resign and try to collect Medicaid or food stamps." (Doc. 28-7, 132:16–133:4; Doc. 28-8, 17:23–18:8; Doc. 28-9, p. 2). During the conversation, Ms. Trauger advised Plaintiff that she would not appeal Plaintiff's unemployment claim if she resigned and sought unemployment benefits. (Doc. 28-7, 133:9–15; Doc. 28-8, 17:4–9). Plaintiff rebuffed Ms. Trauger's advice to resign and complained that she felt she was being harassed. (Doc. 28-7, 162:16–163:7; Doc. 28-10, p. 2).

As Plaintiff's FMLA leave period was running out, she experienced a bout of bronchitis, so she applied for additional leave pursuant to the Americans with Disabilities Act ("**ADA**") through April 15, 2016. (Doc. 28-7, 49:8–13; Doc. 28-11, pp. 2–3). Ms. Smith forwarded Plaintiff's request to Stuart Buchanan—an attorney who took on legal work for OCTC—with a recommendation that the ADA request be denied and an indication that Plaintiff would be terminated upon her return from leave. (Doc. 28-12, pp. 2–3). Mr. Buchanan advised Plaintiff that she needed to fill out additional paperwork to qualify for leave under the ADA. (Doc. 23-1, p. 149). Mr. Buchanan repeatedly requested medical records and other documentation from Plaintiff, at times for information that had already

been supplied. (Doc. 28-7, 52:11–53:3, 55:11–57:22; Docs. 28-14, 28-15). Ultimately, Plaintiff was granted additional leave through April 3, 2016, but her request for leave through April 15, 2016, due to her bronchitis was denied. (Doc. 28-13, p. 2; Doc. 28-15, p. 5).[5] Although the extra leave was initially denied, Defendant allowed Plaintiff to return to work on April 20, 2016,[6] after Plaintiff presented a doctor's note excusing her absence. (*Id.* 53:4–21). The doctor's note advised that Plaintiff would need "frequent bathroom breaks" going forward due to her illnesses. (Doc. 28-2, p. 2).

While Plaintiff was out on leave, OCTC excused points for all employees accrued in April 2015, leaving Plaintiff with only seven points upon her return. (Doc. 28-5, p. 2; Doc. 28-7, 113:19–22). But on June 3, 2016, Plaintiff again received an eighth point—this time for being one minute late from a break. (Doc. 28-6; Doc. 28-7, 115:24–116:13). Plaintiff disputed the tardy and requested that her supervisor review the video system to determine whether Plaintiff was actually late. (Doc. 28-7, 103:5–104:5). According to Plaintiff, Ms. Jordan initially reviewed the tape and agreed that Plaintiff was at her desk on time and should not have received a point. (*Id.*). However, Ms. Trauger intervened and insisted that Plaintiff receive the eighth point. (*Id.*).

The eighth point necessitated a June 8, 2016, predetermination hearing where a panel of OCTC managers and supervisors decided to terminate Plaintiff. (Doc. 24-4,

---

[5] The record makes clear that there were transmission problems with some of the paperwork Plaintiff supplied—that is, Plaintiff returned documents that were illegible. (*See, e.g.*, Doc. 28-7, 56:13–25). However, some of OCTC's redundant requests are less justified. For instance, OCTC required Plaintiff to go back to her doctor to retrieve a document initially supplied on incorrect letterhead. (*Id.* 58:10–60:21).

[6] Plaintiff tried to return April 18, 2016, but was sent home because her doctor's release was printed on Orange County letterhead that Mr. Buchanan supplied Plaintiff rather than the doctor's letterhead. (Doc. 28-7, 58:10–60:21, 67:11–68:12; Doc. 28-22)

5

17:2–18:21; Doc. 24-5, 17:11–18:25; Doc. 28-6, p. 2). According to Ms. Jordan, the decisionmakers were Regina McDaniel (Director of Motorist Services), Landra Robeson (Labor Liaison), and Ms. Trauger. (Doc. 24-5, 18:5–19:25). Ms. Trauger, however, testified at her deposition that her sole function in the termination process was to "sign off for the termination." (Doc. 24-2, 9:8–16).

The record is unclear as to whether an employee with eight points on the tardiness matrix ever keeps their job after a predetermination hearing. Ms. Trauger testified that employees with eight points are always terminated, though she noted that points may not be assessed in certain exceptional situations. (Doc. 24-2, 10:2–11:19, 14:3–17, 23:15–14:6). On the other hand, Cindy Valentine, OCTC's assistant tax collector, testified that an employee with a valid, verifiable reason for a tardy may have points removed at a predetermination hearing. (Doc. 24-3, 18:4–19:1; Doc. 24-5, 33:15–19). Ms. Jordan testified similarly at her deposition, opining that eight points does not always result in termination. (Doc. 24-5, 33:3–13).

In any event, Defendant fired Plaintiff immediately after her predetermination hearing. (*Id.* 34:19–35:7; Doc. 28-7, 123:14–214:3). At the predetermination hearing, Plaintiff did not dispute the eighth point "because [she] knew that no matter what [she] said, they already had made up their minds." (Doc. 28-7, 123:25–124:3). However, Karen Cottee, the employees' union representative, disputed the bases for the termination on Plaintiff's behalf. (Doc. 24-1, 37:8–38:13). Another person at the hearing, Ms. Longest, also spoke up at the hearing and attested to Plaintiff being a "good employee." (*Id.* 38:12–18). Conversely, Ms. Robeson advocated Plaintiff's termination because she had been late—although by only seconds—eight times. (*Id.* 37:19–38:8).

6

In another case, Defendant declined to terminate an employee that reached eight points on the tardiness matrix. Plaintiff testified that a similarly-situated employee, Karina Velazquez, reached eight points but was not terminated. (Doc. 28-7, 140:23–141:18). Ms. Cottee was asked about Ms. Velazquez' case during her deposition. She explained that Ms. Velazquez was not terminated because she was often more than fifteen minutes late for work in the mornings, and these fifteen-minute-plus-morning tardies were tracked on a different, more forgiving, matrix. (Doc. 24-1, 27:19–31:2).

The Amended Complaint asserts claims for disability discrimination, retaliation, and interference under the FMLA and Florida law against Defendant Scott Randolph in his official capacity as Orange County Tax Collector. (Doc. 14). Defendant moves for summary judgment on all claims. (Doc. 22).

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" to support its position that it is entitled to summary judgment. Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials" when resolving a motion for summary judgment. Fed. R. Civ. P. 56(c)(3); *see also HRCC, LTD v. Hard Rock Café Int'l (USA), Inc.*, 703 F. App'x 814, 816–17 (11th Cir. 2017) (per curiam)

7

(holding that a district court does not err by limiting its review to the evidence cited by the parties in their summary judgment briefs).[7]

A factual dispute is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id.* The moving party bears the initial burden of identifying those portions of the record demonstrating the absence of a genuine factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). If the movant shows that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to demonstrate that there are, in fact, genuine factual disputes which preclude judgment as a matter of law. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). Summary judgment is proper when a plaintiff fails to adequately prove up an essential element of their claim. *Celotex*, 477 U.S. at 322–23.

## III. DISCUSSION

### A. Count I: FCRA Disability Discrimination

Count I asserts a claim for disability discrimination under the Florida Civil Rights Act ("**FCRA**"), Fla. Stat. Ch. 760,[8] based on Defendant's failure to make reasonable accommodations for Plaintiff's medical condition. (Doc. 14, ¶¶ 48–56; Doc. 27, pp. 7–12).

---

[7] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

[8] "Claims raised under the [FCRA] are analyzed under the same framework as the ADA." *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1264 (11th Cir. 2007) (per curiam).

Defendant seeks summary judgment as to Count I because (i) Plaintiff's specific accommodation argument advanced in its response brief is outside the scope of the Amended Complaint, and (ii) Defendant made reasonable accommodation for Plaintiff. (Doc. 22, pp. 11–13; Doc. 33, pp. 3–9). Defendant is entitled to summary judgment on Count I because Plaintiff has failed to come forward with evidence showing that Defendant did not reasonably accommodate Plaintiff.

*1. Scope of Amended Complaint Argument*

The Court begins with Defendant's argument that Count I's failure-to-accommodate claim is outside the scope of the Amended Complaint. As Defendant points out, "At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed.R.Civ.P. 15(a). A plaintiff may not amend her complaint through argument in a brief opposing summary judgment." (Doc. 33, p. 3 (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (per curiam)).

In Plaintiff's response brief, Plaintiff frames Count I as a claim for failure to accommodate based on Defendant's failure to allow Plaintiff additional unpaid leave and frequent bathroom breaks. (Doc. 27, pp. 9–10). Count I states, in pertinent part, "Defendant is liable for the differential treatment and its refusal to *accommodate* the Plaintiff which adversely affected the terms and conditions of Plaintiff's employment with Defendant. Such accommodations included *but were not limited to* unpaid leave for periods Plaintiff was unable to work and/or that were not covered by the FMLA." (Doc. 14, ¶ 51 (emphasis added)). Moreover, Count I incorporates by reference numerous earlier paragraphs, one of which alleges: "When Plaintiff returned [from leave], she provided a

9

physician's note, which indicated work restrictions that requested Defendant permit her to take frequent bathroom breaks." (*Id.* ¶¶ 40, 48).

Defendant's constricted view of the Amended Complaint is not supported by the law. In *Gilmour*, the Eleventh Circuit Court of Appeals found that a breach of contract claim—which was entirely absent from a complaint that asserted a litany of tort claims—first asserted in a brief opposing summary judgment was improperly raised. 382 F.3d at 1314–15. *Gilmour* does not provide Defendant the relief he seeks. While *Gilmour* involved a claim appearing for the first time in the briefing, Plaintiff's failure-to-accommodate claim was properly raised in the Amended Complaint.[9] Further, although Defendant contends the Amended Complaint fails to sufficiently allege an accommodation claim, Defendant nonetheless sought summary judgment on such a claim in its initial Motion for Summary Judgment. (Doc. 22, p. 13). Acknowledging this claim as properly raised does not prejudice Defendant because of Defendant's timely awareness of, and requests for judgment on, the claim. (Docs. 22, 33).

### 2. Merits Argument

The Court now turns to Defendant's merits argument on Count I. Defendant argues that Plaintiff's failure-to-accommodate claim is unsupported by the record. (Doc. 22, p. 13).

To state a claim for failure to accommodate, a plaintiff must show: "(1) he is disabled; (2) he is a qualified individual; and (3) he was discriminated against by way of

---

[9] *See id.*; *see also Green Country Food Market, Inc. v. Bottling Grp.*, 371 F.3d 1275, 1279 (10th Cir. 2004) ("A plaintiff should not be prevented from pursuing a claim simply because of a failure to set forth in the complaint a theory on which the plaintiff could recover, provided that a late shift in the thrust of the case will not prejudice the other party in maintaining its defense.").

the defendant's failure to provide a reasonable accommodation." *McKane v. UBS Fin. Servs., Inc.*, 363 F. App'x 679, (11th Cir. 2010) (per curiam). "The plaintiff bears the burden of identifying an accommodation, and of demonstrating that the accommodation allows him to perform the job's essential functions." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001).

Plaintiff contends that Defendant failed to accommodate her disability by preventing Plaintiff from taking additional "unpaid leave and frequent bathroom breaks." (Doc. 27, pp. 9–10). However, Plaintiff has fails to come forward with evidence showing that Defendant did not accommodate her needs and requests. Plaintiff testified that Defendant did not limit the number of bathroom trips she could take. (Doc. 28-7, 153:6–154:3). Further, Plaintiff does not maintain that her tardies were caused by bathroom breaks that Defendant declined to excuse. (*Id.* 154:4–155:18).[10] With respect to additional unpaid leave, Plaintiff has not shown that Defendant denied any of her requests for leave. Although Plaintiff maintains that Defendant engaged in harassment by requesting excessive and sometimes redundant documentation, Defendant ultimately granted Plaintiff medical leave at every turn. On the one occasion where Defendant purportedly denied Plaintiff's request for additional medical leave, Defendant effectively granted the request by allowing Plaintiff to return to work without penalty upon receipt of an acceptable doctor's note. (Doc. 28-7, 53:4–21). In light of the dearth of record evidence showing that

---

[10] Plaintiff testified that after her second, third, or fourth point, she recalled telling a supervisor that she was late because of her medical condition. (*Id.* 155:19–156:5). However, to the extent Plaintiff contends that Defendant failed to accommodate her disability on that occasion, Plaintiff has not shown that Defendant had knowledge of her condition at that stage. (*See, e.g.*, Doc. 27).

Defendant failed to accommodate Plaintiff's disability, Defendant is entitled to summary judgment as to Count I. *See Celotex*, 477 U.S. at 322–23.

## B. Counts II and V: FCRA and FMLA Retaliation

Counts II and V level claims for retaliation in violation of the FCRA and FMLA. (Doc. 14, ¶¶ 57–63). Defendant's motion for summary judgment on Counts II and V is due to be denied. (Doc. 22, pp. 13–15).

Federal case law applies to FCRA retaliation claims. *Carter v. Health Mgmt. Assocs.*, 989 So. 2d 1258, 1262 (Fla. 2d DCA 2008). To establish a *prima facie* retaliation claim, the plaintiff must show: "(1) that she engaged in statutorily protected expression; (2) that she suffered an adverse employment action; and (3) that there is some causal relation between the two events." *McCann v. Tillman*, 526 F.3d 1370, 1375 (11th Cir. 2008) (quoting *Cooper v. Southern Co.*, 390 F.3d 695, 740 (11th Cir. 2004)). Defendant challenges the first and third prongs.

To establish the first prong, that a plaintiff engaged in protected conduct, Plaintiff must show that she communicated her good faith, reasonable belief that illegal discrimination was occurring. *Arnold v. Heartland Dental, LLC*, 101 F. Supp. 3d 1220, 1227 (M.D. Fla. 2015). "It is not enough for the employee merely to complain about a certain policy or certain behavior of co-workers and rely on the employer to infer that discrimination has occurred." *Webb v. R & B Holding Co.*, 992 F. Supp. 1382, 1389 (S.D. Fla. 1998). Plaintiff testified that she complained to Ms. Trauger that she was being harassed for taking medical leave. (Doc. 28-7, 162:16–163:12). At this stage, Plaintiff has successfully identified a genuine issue of material fact as to whether Plaintiff engaged in protected conduct while employed by Defendant.

Defendant also contests the causation prong. "Establishing the causal link between a protected activity and adverse action is not difficult; a plaintiff need only show that the activity and adverse action are not wholly unrelated." *Shedrick v. Dist. Bd. of Trustees of Miami-Dade Coll.*, 941 F. Supp. 2d 1348, 1367 (S.D. Fla. 2013). Close temporal proximity between the protected activity and the adverse employment action can establish causation. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). Plaintiff has likewise satisfied this prong. The six-month temporal proximity between the complaint to Ms. Trauger and Plaintiff's firing, coupled with the email between Plaintiff's supervisors establishing that Plaintiff's termination was a foregone conclusion (Doc. 28-9, p. 2), are sufficient to demonstrate causation.

If a plaintiff establishes a *prima facie* retaliation claim, an employer may avoid liability by "proving by the preponderance of the evidence that the decision would have been made the same in the absence of discrimination." *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1075 (11th Cir. 2003). Defendant fails to do so. Although Defendant holds out the eight-strikes tardy policy as the "legitimate business reason" for Plaintiff's termination (Doc. 22, pp. 14–15), the record makes clear that the policy was not consistently applied or universally understood. For instance, Ms. Trauger testified that employees with eight points are always terminated regardless of the predetermination hearing (Doc. 24-2, 10:2–11:19, 14:3–17, 23:15–24:6), while other upper-level managers said the predetermination hearing gave employees a bona fide opportunity to avoid termination. (Doc. 24-3, 18:4–19:1; Doc. 24-5, 33:3–19).[11] Furthermore, at least one other employee,

---

[11] What's more, Ms. Trauger's January 6, 2016, email suggesting that her termination is "inevitable" makes clear that Plaintiff would be terminated at Defendant's first opportunity regardless of what happened at the predetermination hearing. (*See* Doc.

Ms. Velazquez, who reached eight points was not terminated by Defendant. (Doc. 28-7, 140:23–141:18). Defendant's explanation that Ms. Velazquez' case was different because she was regularly late by more than fifteen minutes in the mornings—while Plaintiff was late by mere seconds in the afternoon—undermines the legitimacy of the purported tardy matrix policies in the Court's view.

For the foregoing reasons, Defendant is not entitled to summary judgment as to Counts II or V.

### C. Counts III and IV: FMLA Interference

Counts III and IV assert FMLA interference claims for Defendant's actions that infringed Plaintiff's FMLA rights with respect to leave Plaintiff took to receive medical treatment (Count III) and to care for her mother (Count IV). (Doc. 14, ¶¶ 64–71). Defendant moves for summary judgment on both Counts. (Doc. 22, pp. 15–17). Genuine issues of material fact remain precluding summary judgment as to Count III only.

The FMLA makes it unlawful "for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). The FMLA "grants an eligible employee the right to take up to 12 workweeks of unpaid leave annually for any one or more of several reasons . . . ." *Hurley v. Kent of Naples, Inc.*, 746 F.3d 1161, 1166 (11th Cir. 2014). To recover on a FMLA interference claim, a plaintiff must demonstrate "that she was denied a benefit to which she was entitled," *Pereda v. Brookdale Senior Living Comms.*, 666 F.3d 1269, 1274 (11th Cir. 2012) (quoting *Harley v. Health Ctr.*, 487 F. Supp. 2d 1344, 1357 (S.D. Fla. 2006)),

---

28-9). This email fortifies Plaintiff's position that the reason given for her firing was pretextual.

14

and that she "has been prejudiced by the violation in some way." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002).

Plaintiff has identified sufficient interference by Defendant for Count III to survive summary judgment based only on Defendant's actions on December 22, 2015—the day she was admitted to the hospital after working a full shift for Defendant. To prevail on an interference claim, Plaintiff must have given Defendant notice of her need for FMLA leave. "When the approximate timing of the need for leave is not foreseeable, an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a). An employee seeking FMLA leave "need not expressly assert rights under the FMLA or even mention the FMLA," but must "provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." *Id.* § 825.303(b). "Once an employee taking unforeseeable leave informs his employer that potentially FMLA-qualifying leave is needed, the regulations place on the employer the burden of ascertaining whether the employee's absence actually qualifies for FMLA protection." *Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1209 (11th Cir. 2001). On December 22, 2015, Plaintiff repeatedly told her supervisors that she was too ill to work and needed to be released for the day. (Doc. 28-7, 108:5–21). Rather than accommodating Plaintiff's requests or investigating whether Plaintiff's condition necessitated FMLA leave, her supervisors threatened firing Plaintiff if she left. (*Id.*). Defendant infringed Plaintiff's FMLA rights by neglecting to investigate Plaintiff's complaints that she was sick, and by holding Plaintiff at work and threatening termination if she left to receive medical treatment. Thus, the Court finds that triable issues

of fact remain as to whether Defendant interfered with Plaintiff's FMLA rights on December 22, 2015.

The Amended Complaint also seeks to recover on Count III for Defendant's excessive demands for paperwork, inappropriate decisions regarding Plaintiff's leave eligibility, and improper FMLA calculations. (Doc. 14, ¶ 65). However, with respect to each of these alleged improprieties, Plaintiff was not "denied a [FMLA] benefit to which she was entitled." *See Pereda*, 666 F.3d at 1274. Plaintiff's requests for leave were eventually granted, and even though Defendant initially denied the request to extend her leave through April 15, 2016, that request was functionally accepted when Defendant allowed Plaintiff to return to work on April 20, 2016, without punishment. (Doc. 28-7, 53:4–21). Defendant's post-December 22, 2015, conduct therefore does not support a FMLA interference claim with regards to Count III.

Defendant is entitled to summary judgment on Count IV. Plaintiff has not come forward with evidence showing that she was denied FMLA leave in connection with her request for leave to care for her mother. Plaintiff testified that Ms. Smith threatened her with termination if she did not return to work with paperwork from her mother's doctor. (Doc. 28-7, 135:12–136:8). Plaintiff's testimony is devoid of facts showing that Defendant prevented Plaintiff from taking leave to which she was entitled (after December 22, 2015) or forced her to return to work prematurely. Therefore, Plaintiff has not shown that she suffered a cognizable FMLA harm with respect to Count IV.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment (Doc. 22) is **GRANTED IN PART** and **DENIED IN PART**.

    a. Defendant's Motion for Summary Judgment as to Counts I and IV is **GRANTED**.

    b. In all other respects, Defendant's Motion for Summary Judgment is **DENIED**.

2. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant Scott Randolph and against Plaintiff Mildred Perez-Davis as to Counts I and IV only.

**DONE AND ORDERED** in Orlando, Florida on December 7, 2018.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

17